May it please the Court, my name is Heather Angove and I represent Louis Agront, Sr. in this matter. This Court should reverse Mr. Agront's conviction because the statute at issue as applied here was void for vagueness, even applying the controlling standard of conduct as the lower courts did below. The void for vagueness doctrine... What does the controlling standard of conduct mean? It means something that was imported into the statute to avoid the vagueness, is that it? Yes. The controlling standard of conduct that has been applied by other courts as to this particular statute under subsection B-11 is that the conduct tends to disrupt or impede the routine operations of the Veterans Administration Hospital or a facility. That was applied by the Sixth Circuit in Williams and also in Fentress. The trial court... There's no Ninth Circuit case holding that that's required. No. There is no authority in this circuit and we are asking this Court to adopt that controlling standard which was applied by the trial court and the district court in the initial appeal. However, that controlling standard of conduct still does not solve the as-applied vagueness as in this case as to Mr. Agront. And the issues addressed in the vagueness doctrine require notice, require conduct that is described by the legislature containing a sufficient definiteness that ordinary people can understand what conduct is prohibited. It also requires guidelines to prevent arbitrary and discriminatory enforcement. As applied to the facts in Mr. Agront's case, it is clear that this statute was void for vagueness as to both issues. Mr. Agront's audible conduct was no more loud, boisterous, or unusual than his son's. The only thing that distinguishes Mr. Agront Sr.'s conduct was his refusal to comply with treatment and his perceived defiant attitude by the officer. I would point out in the government's brief that I believe the government misstates the record in saying that Mr. Agront, there was testimony that Mr. Agront continued yelling after his son. There was no testimony that Mr. Agront continued yelling after his son. First of all, Officer Calkins testified in the excerpt of record at 259-269 that as he arrived and as he approached the cluster of individuals, he saw both men yelling. Both men were yelling. The son obeyed his command to step back, but the father did not. His son, the son also testified that he kept yelling when the officers were there. When he saw that the officers arrived, he believed the officers would help him get his father back into the VA hospital for treatment, and so he continued yelling. He backed up physically, but he did not stop yelling. Now, wait a minute. Just to be clear, the son complied and the father didn't. The son complied with the command to step back. And stop yelling. Initially, the son did not comply with that. The testimony shows that the son was yelling when the police arrived, when additional officers arrived. And at the point, the testimony by Roxanna Grant at excerpt of record 409, that it was not until another officer arrived and took the son aside personally that the son's voice became hushed. The son also said that the father... Here's the problem. You have two people who are overreacting. But the statute is directed at disrupting the hospital facility. And it's not just the yelling. Once you've pulled people out from their normal occupation, you've got them then engaged in activities. Now, the security officers arguably are just doing their job. But you had, what, you had a nurse come out? And if this hadn't become aggravated by the elder Grant, it probably would have never been charged. Actually, the record shows that it was the son that accosted his father. His father, Mr. Grant... He wanted to get him back in, I understand. Right. And Mr. Grant had left the hospital, had declined treatment, and was ready to leave the premises when he was stopped by someone without the authority to stop him. He wasn't stopped by a nurse, a social worker, or an officer at the VA. He was stopped by his son. The son instigated an argument with his father, was yelling loudly. Both of them could be heard yelling loudly. When the police arrived, the initial Officer Calkins perceived Mr. Grant taking a defiant stance and that he did not step back. Mr. Grant did explain that he had a back injury, and eventually the officers helped him to sit down. Both men were loud and yelling. The fact that this statute was applied in an arbitrary and discriminatory nature is shown... What it amounts to is that what you're saying is that he was really prosecuted for not obeying the officers, not for the noise. He was prosecuted for his defiant attitude and his refusal to get treatment. And the officer testified that he is permitted to cite Mr. Grant for any number of federal or state offenses on the property of the VA. He cited him, and the government charged in the information at the excerpt of Record 464, disorderly conduct which creates a loud, unusual, or boisterous noise. That conduct, that inaudible conduct, is the only thing that distinguishes the father's heart. So the sentence was probation for six months. That's over? That is over. So what's the collateral consequence? The consequence is that Mr. Grant has a misdemeanor conviction on his record. No, I understand that, but aside from that, I'm just asking, is there some collateral consequence I'm not seeing here? I do not know if there is a collateral consequence. I do know he has a record that is enforced at the VA hospital in terms of the fact that he has had an incident there, and that can present problems for him. I've had that issue come up with other clients. Right, but, I mean, the fact that it's a conviction isn't going to alter that. They're going to record it as an incident, right? Yes, they would record it as an incident. Okay. I think we have your argument at hand. Do you want to reserve some time for rebuttal? Yes, Your Honor. Thank you. May it please the Court. My name is Ann Voights, and I represent the government in this case. This Court should affirm defendant's conviction, first because, as applied, defendant's conduct was plainly prohibited by the regulation at issue, and the regulation was not enforced in a discriminatory way. Second, the evidence in the record is more than sufficient for a reasonable factfinder to find that defendant, in fact, violated the regulation at issue here. If I might begin by addressing a question that Judge Berzon raised, the question about where the controlling standard of conduct has come from. Those courts that have considered and uniformly rejected a facial challenge to this regulation have simply construed the statute in light of the three different elements or the three different ways in which the regulation can be violated. There's loud voices and unusual noise. There's the obstruction of the normal use of the facilities, and then tending to impede or prevent the normal operation. So to the extent that courts have chosen to include a controlling standard, they have done so by looking at that subprovision of the regulation as a whole. But they have not done what defendant has argued here, that, in fact, you have to show an actual impact on the functioning of the VA. So first of all, does the government agree that that's the appropriate way the regulation should be interpreted? The government, in fact, believes that no controlling standard is required. As the Court in Roan, it's an unpublished decision out of the Tenth Circuit, held. The regulation is framed in the disjunctive. However, if this Court were to import one or were to include one, it should include the one considered by the courts in Williams, Fentress, and Dyers. That is simply because it can't be used.   It's a question of whether the defendant is standing by itself, a loud voice. Well, first of all, the regulation actually has an offense and then it has a list of penalties. The actual offense just says, loud or unusual noise. It doesn't so the question would have to be whether loud or unusual noise is sufficiently clear to be non-vague. In this case, defendant was charged with B-11, which is, you know. Well, but that's the offense, as I understand it. That's the schedule of offenses and penalties, which basically is the penalties. Correct. In this case, however, I think the inclusion of the language of disorderly conduct I think if the Court reads the regulation as a whole, it's not simply conduct which creates a loud or unusual noise, but also that does tend to disrupt the operations of the VA. And in this case. But you said you don't want us to import that. That is the government's position. If, however, the Court disagrees and finds that. I understand that. I'm trying to. So therefore, your argument is that without which intends to impede or prevent, it's not unconstitutionally vague. Correct. However, if this Court, it is permissible for the Court to do. So I was simply testing that proposition, because it seems to me we have a legal issue before us, which is does this do what does one read into what you're calling the controlling conduct or doesn't one. And you're saying we shouldn't. So I'm trying to test that proposition. I understand. With respect to the loud, boisterous, unusual noise, we would submit that because this is akin to granted in that it prohibits the noise in a particular place, that that is sufficient in this case to avoid a vagueness issue. But even if it were not, then reading it as the magistrate judge and the district court did, they said even if you do import this standard, does it tend to disturb the operation, that that standard was amply met in this case. Because here the evidence showed that you could hear the yelling. The emphasized evidence showed that you could hear the yelling from 25 yards away. Although it was outside, you could hear it within the lobby. It was significant enough that both the nurse and the social worker. Can I back up for a minute? Sorry. This is plainly a very odd and unusual case. I mean, one walks away and says, why did the government prosecute this? I suppose that's a strange question, but I have the additional question of why does the government have any interest in this being maintained, and I'm wondering whether you do. I think the government does because there is an importance of both the nurse and the social worker testified about the importance of being able to enforce quiet at the hospital, particularly at night, and that this was not. They said the social worker testified. But the whole problem here was that this man was disturbed and having problems, and that's why his family was bringing him into the hospital. They did. And as the defendant has pointed out, he was competent to refuse treatment. He had left before without incident. What raised this to the level of requiring a citation was that defendant this time didn't leave. He went into the parking lot and was in a kneeling position. Can I ask a strange question? Would the government have any interest in having our court mediators sit down with the two of you and see if there's some way to resolve this case, when all we have left here is the question of whether there's going to be an incident on this man's record? I believe I would need to consult with my supervisor before I could respond to that, but I certainly would be happy to do that and then to report to the court through a letter. Because all we have left here is the question of he's gone through his probation and the only thing left is whether he's going to have this on his record. Correct. He had probation and he also had, in the interest of clarity, he also had a fine of $60 in this case. Go ahead. If I might turn to the factual question that the defendant raised. The defendant says that it was, in fact, not true that defendant's conduct was different from that of the son, but, in fact, it was in this case. Here, it both predated and postdated, it bookended, essentially, the son's testimony. If you look at ER page 37 through 40, that's Officer Culkin's testimony about the fact that the son, in fact, complied with the orders to step back. But that doesn't – I mean, what's troubling about that rationale is that it doesn't have anything to do with the infraction. In fact, I believe it does, because he went on to testify that – and this is at ER 124 – yeah, I'm sorry, ER 40 – that the defendant continued to yell even when he was handcuffed, even after he had been assisted in sitting down. By contrast, the defendant is relying on the son's testimony, which as a whole was not credible and wasn't credited, in fact, by the magistrate judge, because the son testified that his father had never yelled, which was clearly something that both the magistrate judge and the district court rejected in this case. Nor was this a case about the defendant being punished or about this being discriminatorily enforced because he had refused treatment. He had left before without incident. Here, he had left and refused treatment. The reason why the social worker and why the nurse went forward, went out of the potential for the escalation of this into physical violence. And the VA, to return to your question about the interest that the government has, the VA has an interest in being able to prevent violence and to resolve conflicts on its territory. And that's exactly what the officers in this case tried to do. And as the social worker testified, she said that she had repeatedly dealt with upset patients. That is part of her job. But that this was not – was well beyond what she normally had to deal with. And as the officer also testified, this was not simply a normal family dispute. This was something that required the assistance of several officers to resolve. For those reasons, we would submit that the regulation as applied is not void for vagueness, and it was not enforced in a discriminatory way, and that the evidence in this case is sufficient to support the defendant's conviction. If the Court would like, I would be happy to submit a letter with respect to the question about mediation. But if there are no further questions, I'd be happy to submit. Thank you, counsel. Thank you. In regard to Judge Berzin's questions regarding the controlling standard, I would point out that the disorderly conduct, which creates the loud, unusual, and boisterous noise, disorderly meaning without order, I would suggest that that does give the standard, requiring conduct that tends to disrupt or impede the normal routine operations of the hospital. I would respectfully submit that there is nothing in the record that shows the trial court or the district court discredited the family's testimony, found that they weren't – that the son was not credible or that the son was dishonest, and that the conduct as described that was committed by Mr. Grant, his perceived defiant attitude, and his refusal to go forward with treatment, his willingness to leave the facility, does not satisfy the statute here. And we would ask the Court to reverse this conviction. What's your thinking about mediation? Again, I have the same response. I would be happy to speak with my client to see if he would be interested in pursuing that. And I would be happy to follow up in a letter with the – to the Court. Thank you. Thank you, Your Honor. Thank you both for your arguments. The case has heard will be submitted for decision.
judges: Thomas, Fisher, Berzon